[Civ. No. 39120. First Dist., Div. Four. Aug. 3, 1977.]

Estate of BERTHA C. TOY, Deceased.
N. A. SAPUNAR, Petitioner and Appellant, v.
COLDWELL BANKER & COMPANY et al.,
Objectors and Respondents.

**COUNSEL**

Walter W. Mollison for Petitioner and Appellant.

Spinetta, Randick & O'Dea and Robert A. Randick, Jr., for Objectors and Respondents.

**OPINION**

**CHRISTIAN, J.**—N. A. Sapunar appeals from a judgment denying him a commission on the sale of real property by respondents as executors of the will of Bertha C. Toy, deceased. Respondents had returned to the court a private sale to another party. At the hearing, appellant bid $1,203,107, a sum at least 10 percent more than that stated in the return of sale. The court confirmed a sale to appellant and awarded a commission of $25,000 to Coldwell Banker & Company, the broker who had acted for the executors in obtaining the first bid.

Appellant moved to vacate the order and for an evidentiary hearing, contending that a broker's commission should have been awarded to him. The court in effect granted the motion to vacate: the court conducted an evidentiary hearing, made findings, and rendered judgment denying the relief sought by appellant.

In late 1974 or early 1975, appellant and many other real estate brokers received in the mail a flyer from the respondent executors,

announcing that there would be a private sale of San Francisco realty belonging to the estate. At the private sale appellant's bid, in his own name, was highest. It was rejected because it contained unsatisfactory conditions and was not in proper form. The bid of respondent Coldwell Banker ($1,050,101), in the name of its client, was accepted.

When the sale came on for confirmation by the court (Prob. Code, § 755), appellant announced that he would make a higher offer "subject to the usual real estate commission." After the bidding was completed and the court had announced a sale to appellant at a price of $1,203,107, the court declared: "This man is buying for himself. There is no real estate commission there."

Appellant informed the court that it was his understanding that a commission should be allowed. The court asked if he wished to withdraw the bid. Appellant did not withdraw the bid; he replied that he would like to change the name on the bid, that he was buying "for someone else." The court did not reply, and the hearing ended.

Appellant paid the deposit that day and later completed the sale, but has not received a commission.

■ Appellant contends that as a matter of law a broker who purchases for himself is entitled to a commission upon confirmation of a probate sale. This contention cannot be sustained. Probate Code section 761[1] provides that, when a sale is made on an increased bid, one-half of the commission is to be paid to "the agent, if any, who procured the purchaser to whom the sale is confirmed." This provision contemplates compensation for services which produce a successful bid, not an automatic discount for any purchaser who happens to be a licensed broker. Thus, in *Batson* v. *Strehlow* (1968) 68 Cal.2d 662, 671 [68 Cal.Rptr. 589, 441 P.2d 101], the Supreme Court broadly indicated that compensation can be paid by an estate to a broker "*only* in his capacity as an agent or broker." A broker who bids in his own behalf is not acting in such a capacity, and is not entitled to a commission.

---

[1]Probate Code section 761: "In case of sale on an increased bid made at the time of confirmation to a purchaser not procured by the agent holding the contract, the court shall allow a commission on the full amount for which the sale is confirmed, one-half of said commission on the original bid to be paid to the agent whose bid was returned to the court for confirmation and the balance of the commission on the purchase price to the agent, if any, who procured the purchaser to whom the sale is confirmed. If the successful bidder is not produced by a bona fide agent, then the agent holding the contract shall be allowed a full commission on the amount of the original bid returned by him."

A contrary conclusion was reached in *Estate of Baldwin* (1973) 34 Cal.App.3d 596 [110 Cal.Rptr. 189], where the Court of Appeal affirmed an order giving a commission to a broker bidding in his own name. The broker's bid was highest at the private sale, and the estate accepted the bid in writing. At the hearing to confirm sale, the broker was outbid. The trial court awarded the first broker one-half the commission he would have received had he obtained the sale (Prob. Code, § 761). On appeal the order was affirmed, on a holding that the broker had an enforceable contractual right to a commission (Prob. Code, § 760)[2] and that the fact that the broker bid in his own behalf did not except him from collecting a commission. The court said:

"The relationship of a real estate broker to his principal not only imposes upon him the duty of acting in the highest good faith towards his principal but precludes the broker from obtaining any advantage over the principal in any transaction had by virtue of his agency. (*Batson v. Strehlow,* 68 Cal.2d 662, 674-675 [68 Cal.Rptr. 589, 441 P.2d 101].) In fact, a minority of foreign jurisdictions hold that a broker-purchaser cannot collect a commission even where he discloses his dual capacity (*see Stewart* v. *Mather,* 32 Wis. 344; *Christianson* v. *Mille Lacs Land and Loan Co.* (1910) 113 Minn. 120 [129 N.W. 150], but this is not the California rule. While an agent owes a duty of acting in the highest good faith towards his principal, he nonetheless may acquire property from his principal, provided he makes a full disclosure of all material facts concerning the transaction which might affect the principal's decision. (*Donnellan* v. *Rocks,* 22 Cal.App.3d 925 [99 Cal.Rptr. 692].)

"Public policy considerations dictate that brokers be allowed to act in a dual capacity, providing they make a full disclosure. This is particularly true in connection with sales involving large, valuable pieces of property to encourage brokers to expend substantial time, money and effort to effect a sale and to acquire an interest in the property themselves. Nor is there anything ominous about brokers acting in a dual capacity in probate sales. Sufficient safeguards presently exist to protect the estate's interests. Without detailing all those legal precautions, suffice it to say that the appraisal, notice, and public sale requirements of the

---

[2]Probate Code section 760 covers commission for a broker who procures a bid which is accepted at a sale prior to the confirmation hearing. In part it provides: "The executor or administrator may enter into a written contract with any bona fide agent or broker, . . . for the payment of a commission out of the proceeds of the sale. . . . [¶] When said sale is confirmed to such purchaser, such contract shall be binding and valid. . . ."

Probate Code are sufficient deterrents to the practice of any possible deception on the estate's legal representatives. Additionally, such sales are subject to judicial approval." (*Estate of Baldwin, supra,* 34 Cal.App.3d at pp. 605-606.)

The *Baldwin* court assumed that because a broker may purchase from his client if he makes a full disclosure, he may recover a commission in such a purchase. But the right to recover a commission on a probate sale is to be determined separately from the question whether a person who has been retained to act as a broker may purchase the subject property on his own account. Entitlement to receive a commission from the estate is regulated by statute. Probate Code sections 760, 761, 761.5 and 785 all speak of compensation to an agent or broker in procuring a bid from a purchaser. The statutes do not suggest an intention to give an automatic discount to any purchaser who happens to hold a real estate license. On the authority of *Batson* v. *Strehlow, supra,* we are unable to follow *Estate of Baldwin, supra;* the trial court acted correctly in denying a commission to appellant.

The judgment is affirmed.

Caldecott, P. J., and Rattigan, J., concurred.

A petition for a rehearing was denied August 26, 1977, and appellant's petition for a hearing by the Supreme Court was denied September 28, 1977. Bird, C. J., was of the opinion that the petition should be granted.