REAL ESTATE DYNAMICS,
INC., Appellant,

v.

Darrel E. RICHARDS, et al.,
Respondents.

No. C9–86–396.

Court of Appeals of Minnesota.

Aug. 12, 1986.

Jon R. Hawks, Hawks & Riihiluoma, Minneapolis, for appellant.

Thomas W. Pugh, Thuet, Lynch, Pugh & Rogosheske, S. St. Paul, for respondent.

Considered and decided by PARKER, P.J., and WOZNIAK and SEDGWICK, JJ., with oral argument waived.

## OPINION

PARKER, Judge.

This appeal is from a grant of summary judgment to respondents Darrel and Marian Richards. Appellant Real Estate Dynamics, Inc. (Dynamics), had brought this action alleging the Richards breached two

exclusive real estate listing contracts; Dynamics sought its commissions under those agreements. Both parties had moved for summary judgment. Dynamics contends a grant of summary judgment to the Richards was inappropriate because the trial court misapplied the law and because genuine issues of material fact exist. We disagree and affirm.

## FACTS

The Richards entered into two exclusive three-month listing agreements with Dynamics, a real estate broker licensed to do business in Minnesota. Both agreements were for the sale of commercial properties owned by the Richards, one located on Marie Avenue in St. Paul and the other located on 12th Avenue in South St. Paul. Under the terms of each agreement, the Richards appointed Dynamics as their agent and granted Dynamics the "exclusive right to sell the real estate described herein for the List Price and Terms herein set forth or such other price and terms which [the Richards] may hereafter accept." Both agreements provided that the Richards would pay Dynamics' commission "[i]f, before the expiration of this agreement [Dynamics] produce[s] a buyer 'ready, willing, and able' to purchase the above described property consistent with the terms of this agreement."

In January 1985 Dynamics presented the Richards with a purchase agreement from Fred Klug offering to buy both properties. Negotiations involved a counteroffer by the Richards, a second offer by Klug, and a second counteroffer by the Richards. This second counteroffer was dated February 1, 1985, and conditioned upon Dynamics agreeing to accept a reduction of its commission, from $38,000 to $19,000. When Dynamics would only agree to reduce its commission to $28,800, the Richards' counteroffer, by its terms, became "null and void" and was not extended to Klug. The listing agreement on the Marie Avenue property expired on February 12, 1985.

Dynamics subsequently presented the Richards with a proposed purchase agreement dated March 12, 1985, for the 12th Avenue property. This proposed agreement was submitted by Brick and Mortar Partnership and signed by Robert Stevens, the managing general partner of Brick and Mortar and a real estate salesperson employed by Dynamics. The offer matched all of the terms and conditions of the listing agreement for the property. Although the Richards were provided with information regarding Stevens' personal financial background, they claim that they refused to accept Stevens' offer when Dynamics failed to produce financial information on the partnership and when they discovered the Minnesota Secretary of State had no record of the partnership. The listing agreement on the 12th Avenue property expired on March 21, 1985.

Dynamics contends it earned its commission and is entitled to $28,800 even though no sales were consummated. The trial court rejected Dynamics' arguments and concluded that it was not entitled to a commission based on the offers made by Klug or on the offer made by Brick and Mortar.

## ISSUES

1. Did the trial court err in concluding that Dynamics is not entitled to a commission based on an offer made by one of its employees, absent a special agreement for such compensation?

2. Did the trial court err in concluding that Dynamics is not entitled to a commission based on the offer made by Klug because the offered terms did not match listed or authorized terms?

## DISCUSSION

Summary judgment may be granted if "there is no genuine issue as to any material fact and * * * either party is entitled to a judgment as a matter of law." Minn.R. Civ.P. 56.03.

On appeal from a summary judgment it is the function of this court only to determine (1) whether there are any genuine issues of material fact and (2) whether

the trial court erred in its application of the law.

*Betlach v. Wayzata Condominium,* 281 N.W.2d 328, 330 (Minn.1979). The evidence must be viewed in the light most favorable to the one against whom summary judgment was granted. *Abdallah, Inc. v. Martin,* 242 Minn. 416, 424, 65 N.W.2d 641, 646 (1954).

## I

■ Dynamics contends it is entitled to a commission based on the purchase agreement submitted by Brick and Mortar Partnership for the 12th Avenue property because the partnership was a buyer "ready, willing, and able" to purchase on the listed terms. The proposed agreement was signed by Stevens, both in his capacity as an agent for Dynamics and in his capacity as the general managing partner of Brick and Mortar. Stevens' employment with Dynamics was fully disclosed, and he acknowledged the conflict of interest.

A broker or agent may recover compensation on a sale to himself if the parties, with full knowledge of the facts, so agree. *Edmundson v. Phenix,* 146 Minn. 331, 336, 178 N.W. 893, 895 (1920). By becoming the purchaser, the agent forfeits his right to a commission for effecting a sale and is not, in the absence of a special agreement after the change of the relationship, entitled to a commission. *Christianson v. Mille Lacs Land & Loan Co.,* 113 Minn. 120, 124–25, 129 N.W. 150, 152 (1910). It is not uncommon for a broker to purchase property he has been employed to sell, but in order to preserve the principal-agent relationship, the circumstances of the sale must be disclosed, discussed, and accepted by the seller. This rule, "which is based on considerations of common sense and honesty to prevent agents from compromising their principal's rights and interests in favor of their own and to remove the temptation of agents to be disloyal to their principals, is enforced rigorously as a matter of public policy." *Doyen v. Bauer,* 211 Minn. 140, 145–46, 300 N.W. 451, 455 (1941).

Dynamics agrees that consent or ratification by the seller is required, but insists that "the trial court carried this requirement too far." It urges that "[t]he proper rule would be to find that the consent required was embodied in the listing agreement." The express terms of the agreement, however, do not give Dynamics or one of its agents the option of purchasing the property without forfeiting the commission.

Dynamics also argues that the record discloses acts by the Richards which might be construed as consent or ratification of the sale, including refusing to give reasons for turning down the Brick and Mortar offer, failing to raise the conflict of interest objection until after Dynamics had moved for summary judgment, and admitting in their answer that they would have consented to the sale to Brick and Mortar but for the fact that they lacked financial information about the partnership. Consent cannot be implied in a situation such as this where the broker's dealings represent a clear conflict of interest. The Richards indicated some distrust of the proposed buyer's financial ability; they need not, in these circumstances, be required to express their reservations on Stevens' conflict of interest, especially when Stevens himself admitted such. *But see Sherwood v. Rosenstein,* 179 Minn. 42, 228 N.W. 339 (1929) (in sale to third party, seller must specify grounds for refusing to consummate transaction so that objection to sale might be cured).

## II

■ Dynamics next contends that it is entitled to a commission based on the offers and counteroffers between Klug and the Richards. A broker is entitled to a commission under a listing agreement

> when he produces a purchaser ready, willing, and able, to purchase the property on terms fixed by the owner, or when he obtains a contract from a proposed purchaser able to buy whereby he is legally bound to buy on the authorized terms.

*Lohman v. Edgewater Holding Co.,* 227 Minn. 40, 44, 33 N.W.2d 842, 845 (1948) (quoting 1 Dunnell, Dig. § 1147). These two alternatives address different situations. The first applies "when an able buyer offers to buy on the seller's listed terms, but the seller refuses to accept * * * [while the second applies] when an agreement has been reached for purchase, either on listed or authorized terms, and the seller refuses to complete the transaction." *ERA Town and Country Realty v. TEVAC, Inc.,* 376 N.W.2d 526, 528 (Minn.Ct.App.1985).

Under the first situation, Dynamics is entitled to a commission if Klug can be considered a buyer willing to purchase on the Richards' terms. An offer need not meet the listed terms exactly; a broker may be deemed to have fully performed its obligations under a listing agreement by procuring a buyer ready, willing and able to purchase the property on terms at some variance to the listed terms if the offer closely meets the seller's purchase requirements. *See id.* at 527.

The trial court properly concluded that Klug's second offer differed substantially from the combined terms of the two listing agreements, not only in terms of the downpayment, but more significantly in terms of the financing of the balance owed. Klug proposed to finance the balance over 12 years instead of over 10 years as called for by the listing agreements; the present value calculations of two contracts for deed under these terms would be substantial. Even comparing Klug's second offer with the Richards' first counteroffer reveals that a $10,000 difference in downpayment existed.

■ Dynamics further contends that the Richards' second counteroffer was so close to Klug's second offer as to be tantamount to agreement. Determination of offer and acceptance in real estate contracts is governed by the mirror image rule.

> An acceptance, to be valid and to give rise to a binding contract, must be made in unequivocal and positive terms which comply *exactly* with the requirements of the offer. If the acceptance seeks to vary, add to, or qualify the terms of the offer, it is not positive and unequivocal, and constitutes a rejection of the offer and counteroffer. A valid acceptance must not only embrace the terms of the offer with exactitude, but it must be unequivocally expressive of an intent to create thereby, *without more,* a contract.

*Minar v. Skoog,* 235 Minn. 262, 265–66, 50 N.W.2d 300, 302 (1951) (emphasis in original) (footnotes omitted) (quoted by *Rose v. Guerdon Industries, Inc.,* 374 N.W.2d 282, 284 (Minn.Ct.App.1985)).

The Richards made their second counteroffer expressly contingent upon Dynamics' acceptance of a decreased commission, having in mind their net to be received. Because this was not agreeable to Dynamics, this second counteroffer, by its terms, was not even extended to Klug. Hence, no agreement was reached between the Richards and Klug. It is to be noted that the commission reduction sought by the Richards was substantially the same as the difference in downpayment offered by Klug in his second offer. It appears that negotiations between the seller and the broker as to whom would accept the reduction in cash, as offered by Klug, were fruitless, and the sale could not be consummated. The trial court properly granted summary judgment against Dynamics on this claim.

The Richards contend they are entitled to attorney's fees under Minn.Stat. § 549.21 (1984). This appeal was not without merit or frivolous. As for reimbursement of their costs and disbursements, respondents' attention is directed to Minn.R.Civ.App.P. 139.01 and 139.02.

## DECISION

The trial court's grant of summary judgment is affirmed.

Affirmed.

WOZNIAK, J., dissents.

WOZNIAK, Judge (dissenting).

I respectfully dissent.