**David T. ANDERSON, Respondent,**

v.

**Robert F. SOMMER, Appellant.**

No. C7-85-1536.

Court of Appeals of Minnesota.

Feb. 4, 1986.

Mark W. Kelly, William F. Kelly & Associates, Excelsior, for respondent.

Kristafer Skjervold, Skjervold Law Office, Shorewood, for appellant.

Heard, considered and decided by FORSBERG, P.J., and LANSING and RANDALL, JJ.

## OPINION

LANSING, Judge.

David Anderson brought this action to recover the cost of materials used to improve property he rented from appellant Robert Sommer. The trial court found there was an oral contract between the parties covering the material costs and ordered judgment for Anderson in the amount of approximately $3,800. Sommer appeals, and we affirm.

## FACTS

In November 1980 David Anderson moved into a single-family home in Excelsior, Minnesota, owned by Robert Sommer. Anderson and Sommer agreed to an oral one-year lease. They each acknowledge that when Anderson moved into the home it needed extensive cleaning and repair.

Sommer intended to sell the property by December 1984 when a balloon payment would become due on the underlying contract for deed. In December 1980 Anderson told Sommer that he was interested in buying the property. Anderson testified that he and Sommer agreed that Anderson, a self-employed carpenter, would renovate the house and receive the benefit of any resulting increase in market value. Anderson hoped this "sweat equity" would help him arrange financing at a later date. Sommer testified to the same basic agreement—he intended to give Anderson the benefit of the increased market value.

Anderson proceeded with major renovation of the property. He installed cabinets, a cooktop and oven, and a sink in the kitchen; remodeled the basement bathroom by adding a ceramic tile shower and floor; repaired the furnace; expanded the basement recreation room by moving walls and adding a laundry room; widened the basement stairway to make room for the passage of a washer and dryer; installed a bar in the recreation room with a ceramic tile floor; built a 20-foot storage shed and pump house to cover the swimming pool pumps and filters; repaired the pool's filtering mechanism and motor; fenced and reclaimed the overgrown yard; put new siding on the front of the house; and painted the house and sheds. Sommer lived on adjacent property, and he visited the house and observed the improvements on numerous occasions. In fact, he stored personal property in the shed that Anderson built.

In the spring of 1982 Sommer asked Anderson whether he was ready to buy the house, and Anderson said he was not. Sommer then said he had to list the house for sale. Anderson testified they agreed that if the house were sold to a third party, Sommer would reimburse him for the cost of materials at the time of sale. Sommer testified the agreement was that Sommer would attempt to make a profit on the house and would reimburse Anderson for the cost of materials only if he made a profit. Anderson continued to work on the house, although the major renovations had been completed. The house was sold in 1984. Sommer refused to pay Anderson for the improvements, claiming he made no profit. Anderson does not dispute that Sommer sold the property for less than the purchase price.

At trial Anderson produced receipts showing he spent about $4,200 on materials. He did not seek recovery for his labor. On the issue of the contract, Donald Shaw, a real estate agent who attempted to sell

the property for Merrill Lynch Realty, testified that he asked Sommer whether his obligation to Anderson should be included as a closing cost on the expense sheet, and Sommer replied, "I'll settle it with him. It's not necessary to put it on the sheet."

The trial court found that Anderson and Sommer had an oral agreement to improve the property so that Anderson could build "sweat equity." The court found in addition that they modified this agreement in 1982 so that Anderson would be reimbursed for the cost of materials if the home were sold to a third party. The court disallowed costs that Anderson could not assign to specific improvements and ordered judgment for Anderson in the amount of $3,804.07.

## ISSUES

1. Is the evidence sufficient to support the trial court's finding that the parties had an oral contract?

2. Is the oral contract barred by the statute of frauds?

## ANALYSIS

### I

Sommer argues that there is no evidence of a settled or fixed agreement which could be construed as a binding contract. The test for contractual formation is an objective one. In *Hill v. Okay Construction Co., Inc.*, 312 Minn. 324, 252 N.W.2d 107 (1977), the court said:

In order for a contract to be specifically enforced, * * * the law requires merely that the parties' intent as to the fundamental terms of the contract can be ascertained with reasonable certainty.

*Id.* at 332, 252 N.W.2d at 114. Furthermore, the law does not favor destruction of a contract for indefiniteness, especially where there has been extensive performance by both parties. *Id.* at 333, 252 N.W.2d at 114. On appeal the evidence must be viewed in the light most favorable to the verdict. *Id.* at 326, 252 N.W.2d at 111.

The trial court found that the parties originally agreed that Anderson would renovate the house in exchange for sweat equity, and later modified the agreement to cover the cost of materials in the event the house had to be sold to a third party. The court relied on Anderson's testimony, which the court's memorandum described as "convincing," and Sommer's acknowledgment of his obligation to Anderson in the conversation with the realtor. The trial court did not believe that Anderson would have continued to work on the property after 1982, knowing that he would be reimbursed only if Sommer made a profit on the sale. The court also relied on the fact that Sommer was fully aware of the extent of the renovations, which were made over a period of almost four years. The evidence is sufficient to support the trial court's finding of an oral contract containing the above terms.

Sommer contends the trial court erred in the measure of damages by awarding the cost of materials rather than the increase in value of the property, which he alleges was negative. *See, e.g., Schultz v. Thompson*, 156 Minn. 357, 194 N.W. 884 (1923) (when a vendee under an oral contract to purchase makes improvements and the vendor refuses to carry out the contract, the vendee may recover for the improvements to the extent they enhance the value of the property); *Marking v. Marking*, 366 N.W.2d 386 (Minn.Ct.App.1985) (in an action for restitution the measure of damages is the increase in value of the property). Sommer also contends the trial court should have depreciated the value of the improvements to compensate him for Anderson's use and enjoyment.

This action is not one for restitution, however, but one on contract. The trial court found that the parties had an express contract covering the cost of materials. The court properly concluded that damages should be determined by the contract. Sommer admits he had an agreement with Anderson to improve the house; even if they had reached no agreement about compensation, the law would imply a

promise to pay the reasonable value of the services performed. *See, e.g., Malmin v. Grabner*, 282 Minn. 82, 163 N.W.2d 39 (1968); *Sitzler v. Peck*, 162 N.W.2d 449 (Ia.1968).

## II

Sommer contends that if there was an oral agreement, then it is barred by the statute of frauds. The statute of frauds prohibits the enforcement of an oral agreement to sell land. *See* Minn.Stat. § 513.04 (1984). The record contains no suggestion that the parties had an agreement to sell the property at any time for any price. The statute of frauds does not apply to an oral agreement to improve property.

## DECISION

The evidence is sufficient to support the trial court's finding of an oral contract to reimburse Anderson for the cost of materials used to renovate Sommer's property. The statute of frauds does not bar an oral agreement to renovate property.

We deny Anderson's request for damages under Minn.R.Civ.App.P. 138 because it does not appear the appeal was taken merely for delay.

Affirmed.